## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

In the matter of the Application of

TOWN OF HEMPSTEAD, LAURENCE
QUINN, RICHARD DeMARTINO and
MICHAEL DALOIA,

                Petitioners,

    -against-

RICK COTTON, in his capacity as Executive
Director of the Port Authority of New York and
New Jersey, THE PORT AUTHORITY OF
NEW YORK AND NEW JERSEY,

                Respondents.

Case No. 2:25-cv-04109 (JMA) (ARL)

ORAL ARGUMENT REQUESTED

## MEMORANDUM OF LAW IN SUPPORT OF RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION TO REMAND

LOEB & LOEB LLP
Frank D. D'Angelo
Danielle C. Quinn
345 Park Avenue
New York, New York 10154
Tel.: 212-407-4189
Fax: 212-407-4990
fdangelo@loeb.com
dquinn@loeb.com

Steven S. Rosenthal*
John David Taliaferro*
901 New York Avenue NW, Suite 300 East
Washington, DC 20001
Tel.: 202-618-5034
Fax: 202-318-0524
srosenthal@loeb.com
jtaliaferro@loeb.com

*Attorneys for Respondents Rick Cotton, in his capacity as Executive Director of the Port Authority of New York and New Jersey, and the Port Authority of New York and New Jersey*
*admitted pro hac vice

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 3

    A.   The Parties and the FAA ........................................................................................... 3

    B.   PANYNJ's Noise Exposure Map ............................................................................. 4

    C.   Town of Hempstead Petitions the FAA for the Same Relief They Seek Here ................... 6

    D.   The Town of Hempstead Files an Administrative Petition with PANYNJ ....................... 7

    E.   Removal of the State Court Action ........................................................................... 8

LEGAL STANDARD ............................................................................................................. 8

ARGUMENT ......................................................................................................................... 9

I.      COURTS CAN EXERCISE FEDERAL JURISDICTION OVER STATE ADMINISTRATIVE PROCEEDINGS ........................................................................ 9

II.    THIS COURT HAS FEDERAL QUESTION JURISDICTION OVER PETITIONERS' CLAIMS ............................................................................................................... 15

    A.   The Amended Petition Turns on a Challenge of a Complex Federal Statutory and Regulatory Scheme ................................................................................................ 15

    B.   The Federal Issue Is Substantial ............................................................................. 16

    C.   Exercising Jurisdiction Will Not Disrupt the Balance of State and Federal Court Litigation ............................................................................................................. 20

CONCLUSION ..................................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. N.Y.C. Campaign Fin. Bd*.,
 No. 25-CV-3380 (NGG) (LKE), 2025 WL 1920885 (E.D.N.Y. July 11, 2025) .....................11

*Bartolini v. Cassels*,
 No. 17-cv-5671, 2018 WL 3023161 (S.D.N.Y. June 18, 2018),
 *aff'd*, 801 F. App'x 10 (2d Cir. 2020) ....................................................................................13

*Beckwith v. Erie County Water Auth*.,
 413 F. Supp. 2d 214 (W.D.N.Y. 2006) ....................................................................................13

*Blatch v. Hernandez*,
 360 F. Supp. 2d 595 (S.D.N.Y. 2005)......................................................................................14

*Broder v. Cablevision Sys. Corp.*,
 418 F.3d 187 (2d Cir. 2005)...................................................................................9, 15, 16, 18

*Casale v. Metro. Transp. Auth*.,
 No. 05 Civ. 4232 (MBM), 2005 WL 3466405 (S.D.N.Y. Dec. 19, 2005) ............12, 13, 15, 22

*Churches United for Fair Hous., Inc. v. De Blasio*,
 No. 151786/2018, 2018 WL 3646976 (Sup. Ct. N.Y. Cnty. July 30, 2018),
 *aff'd on other grounds*, 180 A.D.3d 549 (1st Dep't 2020) .................................................10, 21

*City of Burbank v. Lockheed Air Terminal Inc*.,
 411 U.S. 624 (1973).................................................................................................................21

*City of Chicago v. Int'l College of Surgeons*,
 522 U.S. 156 (1997)........................................................................................................2, 11, 12

*County of Nassau v. New York*,
 724 F. Supp. 2d 295 (E.D.N.Y. 2010) .......................................................................15, 19, 20

*Doe v. New York Univ*.,
 537 F. Supp. 3d 483 (S.D.N.Y. 2021)......................................................................................11

*Doe v. Starpoint Cent. Sch. Dist.*,
 No. 23-CV-207-LJV, 2023 WL 2859134 (W.D.N.Y. Apr. 10, 2023)...............................15, 19

*E. End Eruv Ass'n v. Town of Southampton*,
 No. 13-cv-4810 (AKT), 2014 WL 4773989 (E.D.N.Y. Sep. 24, 2014) ...................................14

*Matter of E. Ramapo Cent. Sch. Dist. v. King*,
 130 A.D.3d 19 (3d Dep't 2015), *aff'd on other grounds*, 29 N.Y.3d 938 (2017).............10, 21

ii

*Freeman v. Burlington Broads., Inc.*,
204 F.3d 311 (2d Cir. 2000)............................................................................ 2, 8-9, 12, 17

*Garofalo v. City of New York*,
No. 1:22-cv-07620-NRM-VMS, 2023 WL 3792514 (E.D.N.Y. June 2, 2023) ...............11, 14

*George v. Bloomberg*,
2 A.D.3d 294 (1st Dep't 2003) ........................................................................10, 21

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005)............................................................................................ *passim*

*Gunn v. Minton*,
568 U.S. 251 (2013)............................................................................................9, 15, 22

*Mai v. New York State Off. of Temporary and Disability Assistance*,
No. 25-MC-1899 (PKC), 2025 WL 1737263 (E.D.N.Y. May 22, 2025) ......................... 13-14

*Medrano v. Margiotta*,
No. 15-3704 (JMA) (ARL), 2017 WL 880964 (E.D.N.Y. Feb. 16, 2017) .......................14, 15

*Morningside Supermarket Corp. v. N.Y. State Dep't of Health*,
432 F. Supp. 2d 334 (S.D.N.Y. 2006)...............................................................13

*N. Am. Phillips Corp. v. Emery Air Freight Corp.*,
579 F.2d 229 (2d Cir. 1978)................................................................................21

*N.Y.C. Health & Hosps. Corp. v. WellCare of N.Y., Inc.*,
769 F. Supp. 2d 250 (S.D.N.Y. 2011)................................................................16

*NASDAQ OMX Grp., Inc. v. UBS, Sec., LLC*,
770 F.3d 1010 (2d Cir. 2014)....................................................................16, 18, 20

*Residents & Families United to Save Our Adult Homes v. Zucker*,
No. 16-CV-1683 (NGG) (RER), 2017 WL 5496277 (E.D.N.Y. Jan. 24, 2017) ...................11

*Still v. DeBuono*,
927 F. Supp. 125 (S.D.N.Y 1996), *subsequent preliminary injunction vacated
and remanded to state court on other grounds*, 102 F.3d 50 (2d Cir. 1996)..........................11

*Tantaros v. Fox News Network, LLC*,
12 F.4th 135 (2d Cir. 2021) ...............................................................................8

*In re Town of Hempstead*,
Case No. 25-1071, 2025 U.S. App. LEXIS 6860 (D.C. Cir. Mar. 24, 2025) ...........................7

*In re Town of Hempstead et al. v. Cotton et al.*,
Index No. 612755/2025 ......................................................................................8

*United Food Local 919 v. Centermark Props. Meridian Square, Inc.*,
    30 F.3d 298 (2d Cir. 1994)...........................................................................8

**Statutes**

28 U.S.C. § 1331 ............................................................................................8

28 U.S.C. § 1367(c) ....................................................................................1, 13

28 U.S.C. § 1441(b) .......................................................................................8

28 U.S.C. § 1983 ......................................................................................13, 14

49 U.S.C. Chapter 475 ...................................................................................4

49 U.S.C. § 106 ..............................................................................................3

49 U.S.C. § 40103 ..........................................................................................6

49 U.S.C. § 40103(b) ...................................................................................3, 4

49 U.S.C. § 44502 ..........................................................................................4

49 U.S.C. § 47503 ................................................................................. *passim*

49 U.S.C. § 47503(b) .........................................................................9, 10, 16, 17

49 U.S.C. § 47503(b)(2) ............................................................................9, 16

49 U.S.C. § 47505 ..........................................................................................5

Congress in the Aviation Safety and Noise Abatement Act of 1979 (PL 96-103;
    94 Stat. 50) ..............................................................................................16

New Jersey Statutes Title 32 (§§ 32:1-1 *et seq.*) ...........................................3

New York Unconsolidated Laws §§ 6401 *et seq.*...........................................3

**Court Rules and Regulations**

CPLR Article 78 ................................................................................... *passim*

14 C.F.R. pt. 97 ..............................................................................................4

14 C.F.R. pt. 150 ................................................................................. *passim*

14 C.F.R. § 150.1 ............................................................................................4

14 C.F.R. § 150.21 ..........................................................................................4

**Other Authorities**

Notice of Approval of the John F. Kennedy International Airport (JFK) Noise
  Compatibility Program, 88 Fed. Reg. 16710 (Mar. 20, 2023)...................................................5

Noise Exposure Map Notice for John F. Kennedy International Airport, New
  York City, New York, 82 Fed. Reg. 24770 (May 30, 2017) ...................................................5

Aeronautical Information Manual, Chapter 5 - Air Traffic Control, Section 4 -
  Arrival Procedures, *available at*
  https://www.faa.gov/air_traffic/publications/atpubs/aim_html/chap5_section_
  4.html (last visited September 24, 2025) ...............................................................................4

Aviation Safety and Noise Abatement Act of 1979, Senate Report No. 96-52
  (Feb. 22, 1979).....................................................................................................................10

FAA JO 7110.65BB, Air Traffic Control, *available at*
  https://www.faa.gov/documentLibrary/media/Order/7110.65BB_Bsc_w_Chg_
  1_dtd_8-7-25.pdf (last accessed September 25, 2025) ..........................................................6

Rick Cotton, in his capacity as Executive Director of the Port Authority of New York and New Jersey, and the Port Authority of New York and New Jersey ("PANYNJ") (collectively, "Respondents") respectfully submit this memorandum of law in opposition to Petitioners Town of Hempstead, Laurence Quinn, Richard DeMartino and Michael Daloia's (together, "Petitioners") Motion to Remand the Amended Petition to state court ("Motion to Remand").

## PRELIMINARY STATEMENT

Petitioners' Motion to Remand should be denied because this Court has federal question jurisdiction over the claims asserted in the Amended Petition.  First, Petitioners' arguments that this is a "pure" CPLR Article 78 proceeding and that Petitioners' two causes of action arise entirely under Article 78 ignores the fact that the entire "right" that Petitioners invoke, and relief that they seek, is premised on a federal statutory and regulatory scheme.  Indeed, petitioners ultimately seek implementation of noise mitigation measures under a federally-approved and funded Noise Compatibility Program.  The development and/or update of a noise exposure map sought by Petitioners is merely the first step in a lengthy and complex federal process for noise impact analysis and abatement planning.  Simply put, this case is a Trojan Horse:  a federal dispute that Petitioners have asserted under the guise of a state-law procedural vehicle.

In arguing for remand, Petitioners rely almost entirely upon certain federal district court cases in the Second Circuit that have declined to exercise *supplemental* jurisdiction over Article 78 proceedings.  Mem. in Supp. of Petrs. Motion to Remand, ECF Doc. No. 9-1 ("Petrs. Br.") at 1, 6-10.  However, those decisions declining to exercise supplemental jurisdiction over a hybrid Article 78 and plenary action involving constitutional issues or federal law did so based on the discretionary provisions of 28 U.S.C. § 1367(c), and are not dispositive on the question of *federal question jurisdiction*.  At best, those decisions reflect a split in authority in the Second Circuit as to district courts' exercise of *supplemental jurisdiction* over Article 78 proceedings.  And even as

to *supplemental jurisdiction*, the decisions cited by Petitioners directly contravene Supreme Court and Second Circuit precedent in *City of Chicago v. International College of Surgeons*, 522 U.S. 156 (1997) and *Freeman v. Burlington Broads., Inc.*, 204 F.3d 311 (2d Cir. 2000). Those two cases establish that federal district courts *can* exercise supplemental jurisdiction over state administrative proceedings.

Finally, Petitioners, in apparent recognition that federal district courts have applied the *Gunn/Grable* test to determine the existence of federal question jurisdiction in attempted removals of Article 78 petitions, *see* Petrs. Br. at 2, 10, do ***not*** dispute that the first two factors of this test are satisfied here. Petrs. Br. at 10. There is a federal issue actually disputed: Petitioners' causes of action turn on whether PANYNJ violated a purported mandatory obligation in 49 U.S.C. § 47503 to update its noise exposure maps for John F. Kennedy International Airport ("JFK"). As such, the parties' *Gunn/Grable* dispute centers on whether (i) the federal issues raised in the Amended Petition are "substantial," and (ii) exercising federal jurisdiction will disrupt the balance of state and federal court litigation. *See* Petrs. Br. at 2, 10. Petitioners first argue that the federal issue is not "substantial" because it is not a "pure question of law." Petrs. Br. at 2, 10-13. Petitioners further argue that exercising federal jurisdiction here would disrupt the balance of state and federal court litigation, relying solely on the state nature of an Article 78 proceeding without substantive discussion of the federal scheme central to their pleading. Petrs. Br. at 2, 14-15. Both these arguments fail. While PANYNJ agrees that "pure questions of law" are "substantial," the fact that the matter at issue here involves an assessment within the context of a complex federal statutory and regulatory scheme does not render this dispute any less "substantial" than disputes involving pure questions of law. Indeed, the Second Circuit has held that federal issues were "substantial" in cases concerning the alleged violation of a federal law that, as here, involved

complex regulatory schemes.  In addition, the balance of state and federal court litigation will not be disrupted in exercising federal jurisdiction here:  given the unique nature of the federal statute and regulatory scheme at issue, the prevalence of federal court litigation concerning federal aviation statutes and regulations, and the fact that no court (state or federal) has interpreted an airport operator's obligations to update a noise exposure map under 49 U.S.C. § 47503, exercising federal jurisdiction in this case will not disrupt the state and federal court balance, but rather reinforce it.  Accordingly, and as further set forth below, Respondents' respectfully request that the Court deny the Motion to Remand.

## **BACKGROUND**

### A.    The Parties and the FAA

PANYNJ is a body corporate and politic and a municipal corporate instrumentality of the States of New York and New Jersey created and existing by virtue of the Compact of April 30, 1921, made by and between those States and consented to by Congress.  ECF Doc. No. 1 ("Notice of Removal") at ¶ 2.  The Compact is embodied in state statute at New Jersey Statutes Title 32 (§§ 32:1-1 *et seq.*) and New York Unconsolidated Laws §§ 6401 *et seq.* and has been amended and extended from time to time by action of the states.  *Id.*  In other words, PANYNJ is a bi-state agency—not a "state agency," as Petitioners incorrectly state.  *See* Petrs. Br. at  1, 6, 13.

The City of New York owns the premises at JFK and leases certain portions of said premises to PANYNJ pursuant to a long-term, written agreement.  Notice of Removal ¶ 3.  JFK is located in Queens, New York, on Jamaica Bay, and is currently the largest airport in the New York metropolitan region by passenger volume and cargo volume.  *Id.* at ¶ 4.

The  Federal  Aviation  Administration  ("FAA")  is  an  agency  within  the  United  States Department of Transportation ("U.S. DOT").  49 U.S.C. § 106.  Under 49 U.S.C. *et seq*., the FAA exercises plenary authority over aviation in the United States, including regulating the safety of

aircraft and the efficient use of the airspace.  49 U.S.C. § 40103(b).  Further, the FAA is responsible for operating the air traffic control ("ATC") system in the United States.  *Id.*  FAA ATC duties include real-time management of aircraft operations; assigning runways for aircraft on approach to, or departing from, an airport consistent with FAA regulations, orders and procedures.  *See, e.g.*, 49 U.S.C. § 44502.  PANYNJ, as the airport operator, does not make decisions concerning runway assignments or flight procedures.  *See* Rigano Affidavit to Amended Petition ("Rigano Aff.") Ex. 2, ECF Doc. No. 9-11 (Port Authority February 2025 Response to Town of Hempstead Petition for Update of Noise Exposure Maps), p. 1 (PANYNJ "does not dictate what approach or departure paths are chosen at any time.  Runway usage decisions fall under the purview of the FAA.").[1]

Petitioner Town of Hempstead (the "Town") is a municipality within Nassau County, New York.  Amended Petition, ECF Dkt. No. 9-3 (hereinafter, "AP"), ECF No. 9-3, ¶ 21.  Petitioners Quinn, DeMartino, and Daloia do not live in the Town of Hempstead, but purport to "reside within and under the Flight Paths" that approach Runway 22 L at JFK.  AP, ECF No. 9-3, ¶¶ 26-29.

## B.    PANYNJ's Noise Exposure Map

14 C.F.R. Part 150 "prescribes the procedures, standards, and methodology governing the development, submission, and [FAA] review of airport noise exposure maps and airport noise compatibility programs."  14 C.F.R. § 150.1.  In connection with the FAA's Part 150 regulatory scheme promulgated under the authority in 49 U.S.C. chapter 475, an airport sponsor may, but is not required to, prepare Noise Exposure Maps ("NEMs").  49 U.S.C. § 47503; 14 C.F.R. § 150.21.  A NEM establishes noise contours for areas surrounding airports.  The NEM may be used to inform the development of a Noise Compatibility Program by the airport and proposed noise abatement

---

[1] *See also* 14 C.F.R. Part 97, and Aeronautical Information Manual, Chapter 5 – Air Traffic Control, Section 4 – Arrival Procedures, *available at* https://www.faa.gov/air_traffic/publications/atpubs/aim_html/chap5_section_4.html (last visited September 24, 2025).

mechanisms for FAA approval.  Structures located within certain noise contours are potentially eligible for sound insulation measures implemented by an airport operator, however, federal funding for the airport's implementation of such measures is not guaranteed as it is within the FAA's discretion whether to grant funding to the airport.  49 U.S.C. § 47505; *see* AP, ECF Doc. No. 9-3, ¶ 2.  A Part 150 noise study was initiated by PANYNJ for JFK in 2014, which included preparation of NEMs, which "were created for two timeframes:  existing conditions (2016) and a year five years into the future (2021)."  Rigano Aff. Ex. 2, ECF No. 9-11, p. 3.  The FAA determined that these NEMs were prepared in accordance with procedures contained in Part 150 and accepted the NEMs on May 19, 2017.[2]  Rigano Aff. Ex. 6, ECF No. 9-15, p. 2.

In 2017, the modeling scenario for developing the 2021 Forecast NEM assumed consistent runway utilization from 2016 through 2021.  ECF Doc. No. 9-14, pp. 4-8 – 4-9.  That resulted in an estimate that there would be 65,333 arrivals on Runway 22L, which was projected to constitute approximately 28.4% of all arrivals at JFK.  Rigano Aff., Ex. 2, ECF No. 9-11, p. 4-5.

The actual number of arrivals on Runway 22 L—which is decided by the FAA, not PANYNJ—depends upon a number of factors, including: (a) runway availability (current closures, airport construction), (b) wind and weather (both current and forecasted), (c) surface conditions (wet runways, snow, ice, braking action, runway visibility range), (d) equipment outages (navigational aids, instrument landing systems, airfield lighting, airport surface detection equipment, radio frequencies, radar, requested maintenance activities), (e) traffic management restrictions (departure spacing programs, expected departure clearance times, in-trail restrictions, destination airport holding situations), (f) special operations (law enforcement, dignitary

---

[2] Notice of Approval of the John F. Kennedy International Airport (JFK) Noise Compatibility Program, 88 Fed. Reg. 16710 (Mar. 20, 2023); Noise Exposure Map Notice for John F. Kennedy International Airport, New York City, New York, 82 Fed. Reg. 24770 (May 30, 2017).

movement, major sporting events), and (g) current and anticipated traffic volume/demand; operational staffing; and pilot requests for specific runways.[3]  Rigano Aff. Ex. 2, ECF Doc. No. 9-11 p. 1.  Excluding 2017 (when Runway 22 L was closed for part of the year for rehabilitation), over the last fifteen years the actual percentage of arrivals landing on Runway 22 L ranged from 22.6% in 2015 to 38.7% in 2023 annually.  *Id*. at p. 3.  The NEM accepted by the FAA in 2017 used the actual, historical percentage of Runway 22 L landings from 2016 which happens to be well within the range of usage for the last fifteen years.  *Id.*; *see also* ECF Doc. No. 9-15 (approving NEM as submitted).

Following the approval of the NEMs, PANYNJ developed Noise Compatibility Program ("NCP") measures.  Rigano Aff. Ex. 6, ECF No. 9-15, p. 2.  The NCP program evaluated a total of 97 measures and recommended a total of 22 measures to the FAA.  *Id*.  The FAA approved, in part, the PANYNJ's NCP, including specific noise abatement measures to prevent the introduction of additional non-compatible land uses and to reduce the effect of the noise generated at the airport, on March 14, 2023.  *Id*.

### C.    Town of Hempstead Petitions the FAA for the Same Relief They Seek Here

On July 3, 2024, the Town of Hempstead, the Town of North Hempstead, and several individual petitioners, including Petitioners Quinn, DeMartino, and Daloia, filed a Petition with the FAA requesting it to do the following: (1) conduct an appropriate environmental review; (2) "[u]ndertake the review of categorical exclusion(s) ("CatEx") for flight paths associated with arrivals to JFK Runways 22 L/R"; (3) "[s]uspend the substantial increase in use of flight paths to

---

[3] Consistent with its plenary authority over the airspace under 49 U.S.C. § 40103, the FAA sets forth its requirements for air traffic control procedures in a number of extensive agency orders. *See, e.g.*, FAA JO 7110.65BB, Air Traffic Control, *available at* https://www.faa.gov/documentLibrary/media/Order/7110.65BB_Bsc_w_Chg_1_dtd_8-7-25.pdf (last accessed September 25, 2025).

JFK Runways 22 L/R until the foregoing analyses are complete"; (4) "[c]ontinue, accelerate and expand efforts to adjust ILS/RNAV routes to JFK Runways 22 L/R to improve compatibility with neighborhoods"; and (5) "[u]pdate the JFK Part 150 Noise Exposure Maps and Noise Compatibility Program, which were based on 2014 data when approximately 30,000 less aircraft arrived on JFK Runways 22 L/R per year."  Rigano Aff. Ex. 8, ECF No. 9-17, p. 1.

The FAA rejected Hempstead's requested relief as to the NEMs.  Specifically, the FAA refused to "Update the JFK Part 150 Noise Exposure Maps," noting that "the submission of these maps and the programs is completely voluntary."  Rigano Aff. Ex. 9, ECF No. 9-18, p.2.  The FAA's Response also noted:  "[T]he airport operator is responsible for developing and submitting noise exposure maps to the FAA.  Therefore, the FAA has no authority under relevant law to 'update the JFK Part 150 Exposure Maps and Noise Compatibility Program.'"  *Id*.  The FAA stated it was "continuing to review the remainder" of the relief requested by the Town of Hempstead.  *Id*. Indeed, although the Town of Hempstead later tried to force the FAA to act by filing a writ of mandamus with the U.S. Court of Appeals for the D.C. Circuit, the D.C. Circuit refused to pretermit FAA's decision-making process.  *In re Town of Hempstead*, Case No. 25-1071, 2025 U.S. App. LEXIS 6860, at *1 (D.C. Cir. Mar. 24, 2025) (unreported) (noting that the amount of time FAA was taking to consider the Town's request was not "egregious or unreasonable," nor should it be treated as a constructive denial of the Town's request for agency action).

### D.    The Town of Hempstead Files an Administrative Petition with PANYNJ

After Petitioners' Petition to the FAA was denied in part, the Town made a substantially similar request concerning NEMs to PANYNJ via an "Administrative Petition [to PANYNJ] For Update To The Noise Exposure Maps And Associated Documents With Respect To The Part 150 Study For John F. Kennedy International Airport."  Rigano Aff. Ex. 1, ECF No. 9-10.  The Port Authority responded on February 14, 2025, noting that a "NEM update is not warranted because

of this temporary change [in the percentage of flights using Runway 22 L]." *See* Rigano Aff. Ex. 2, ECF Doc. No. 9-11, pp. 4-5. The Port Authority's response indicated it will "keep reviewing the changes in Runway 22L usage in future years and determine if an [updated] NEM is warranted in the future." *Id*. at p. 5.

### E.    Removal of the State Court Action

On June 13, 2025, Petitioners commenced the action captioned *In re Town of Hempstead et al. v. Cotton et al.*, Index No. 612755/2025 (the "State Court Action") by filing an Article 78 Petition in New York State Supreme Court, Nassau County. Petitioners filed an Amended Petition on June 23, 2025, and served the same via mail and personal service on June 27, 2025. Notice of Removal ¶ 17. Respondents removed the State Court Action to this Court on July 25, 2025. *See id.* Petitioners filed the instant Motion to Remand on August 22, 2025, ECF Doc. No. 9.

## LEGAL STANDARD

A civil action filed in state court may be removed to federal court if the claim arises under federal law. 28 U.S.C. §§ 1331, 1441(b). Section 1331 confers federal courts with original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." The burden is on Respondents to show that federal jurisdiction is appropriate. *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021). Courts determine the existence of a federal question based on the causes of action as pleaded.[4] *See Grable & Sons Metal Prods. v.*

---

[4] *United Food Local 919 v. Centermark Props. Meridian Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994) (cited in Petrs. Br. at 6) is inapposite. Petitioners cite *United Food Local 919* for the proposition that jurisdictional facts must be demonstrated "by a preponderance of the evidence," Petrs. Br. at 6, but *United Food Local 919* involved a diversity jurisdiction removal and the presentation of "jurisdictional facts" necessary to demonstrate diversity. Since removal here is predicated on a federal question, the issue before this Court is principally one of law, not fact, and the preponderance of the evidence standard does not apply.

*Darue Eng'g & Mfg*., 545 U.S. 308, 314 (2005); *see also Freeman v. Burlington Broads., Inc*., 204 F.3d 311, 317 (2d Cir. 2000); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005).

To determine whether jurisdiction exists over federal issues embedded in state-law claims, federal courts apply the *Grable* and *Gunn* test, which permits removal of state-law claims that "necessarily raise" federal issues, "actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods.*, 545 U.S. at 314; *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

## ARGUMENT

## I.    COURTS CAN EXERCISE FEDERAL JURISDICTION OVER STATE ADMINISTRATIVE PROCEEDINGS

Petitioners argue that they commenced a "pure" Article 78 proceeding, and accordingly the Amended Petition is not subject to federal question jurisdiction.  Petrs. Br. at 6.  This position ignores the causes of action as plead.  *See* AP, ECF Dkt. No. 9-3 ¶ 95(c) ("Failing to prepare such updated NEM in accordance with 49 U.S.C. § 47503(b)(2)"); ¶ 98 ("Respondents failed to comply with their mandatory statutory obligations under 49 U.S.C. § 47503(b) by failing to update the NEM which deprived and continues to deprive the Town, the Individual Petitioners and others similarly situated, including Town's residents, the right noise mitigation remedies and relief."). The precise federal issue which Petitioners introduced—whether the PANYNJ is subject to a mandatory requirement under 49 U.S.C. § 47503 to update the NEMs—necessarily exists within the context of a complex federal scheme involving federal aviation statutes and the FAA's implementing regulations.  The basis for Petitioners' *entire claim* against Defendant Cotton and PANYNJ exists solely because of this unique federal scheme created "to encourage airport

operators to prepare maps and programs and to assure [sic] that the maps reflect as nearly as possible existing conditions", not because of state law.[5]

That Petitioners have fashioned their claim as an Article 78 proceeding does not change the fundamental character of the law alleged to be violated or the relief sought.  The only state-law aspect of Petitioners' claims is the fact that they filed an Article 78 Petition to plead these causes of action as opposed to a regular plenary action in state or federal court seeking to enforce a duty created by 49 U.S.C. § 47503.  It is no surprise that Petitioners did this, since Petitioners lack a private right of action to sue directly under the federal statute at issue, 49 U.S.C. § 47503(b).  *See* Respondents' Ltr. for Pre-Motion Conference, ECF Doc. No. 8 at 1.  Petitioners may not use "artful pleading" to escape federal court jurisdiction, particularly where, as here, New York courts recognize that Article 78 does not provide a free-standing private right of action.  *See, e.g.*, *Churches United for Fair Hous., Inc. v. De Blasio*, Case. No. 151786/2018, 2018 WL 3646976, at *15-16 (Sup. Ct. N.Y. Cnty. July 30, 2018) ("[T]he law in New York is that if there is no private right of action under a federal statute, an Article 78 Proceeding seeking to enforce it will not lie." (citing *George v. Bloomberg*, 2 A.D.3d 294, 294 (1st Dep't 2003) (rejecting the argument that an Article 78 proceeding may be brought based on a statute that does not create a private right of action)), *aff'd on other grounds*, 180 A.D.3d 549 (1st Dep't 2020); *see also Matter of E. Ramapo Cent. Sch. Dist. v. King*, 130 A.D.3d 19, 20 (3d Dep't 2015) (dismissing Article 78 proceeding because there was no underlying private right of action), *aff'd on other grounds*, 29 N.Y.3d 938

---

[5] Aviation Safety and Noise Abatement Act of 1979, Senate Report No. 96-52 (Feb. 22, 1979), at 12.  Congress further explained: "It is of particular importance that local FAA officials provide guidance and technical assistance to airport operators during every step of the process.  Because the federal government, through FAA, has exclusive jurisdiction over such matters as air safety and airspace management, without substantial and positive cooperation from FAA, airport noise compatibility programs will never achieve maximum effectiveness." *Id.*

(2017).  These cases demonstrate that an Article 78 proceeding is not a cause of action but rather a procedural vehicle that expedites review of challenges to state and local authorities' decisions.

Petitioners have failed to cite to, and Respondents have not found, any Second Circuit case holding that federal district courts are barred from exercising *federal question jurisdiction* over an Article 78 petition.  Indeed, several district courts have held that exercising supplemental and diversity jurisdiction over Article 78 Petitions is, in fact, appropriate in certain circumstances.  *See Garofalo v. City of New York*, No. 1:22-cv-07620-NRM-VMS, 2023 WL 3792514, at *5-6 (E.D.N.Y. June 2, 2023); *see also Residents & Families United to Save Our Adult Homes v. Zucker*, No. 16-CV-1683 (NGG) (RER), 2017 WL 5496277, at *13 (E.D.N.Y. Jan. 24, 2017) ("Pursuant to *City of Chicago*, the court finds that the fact that Plaintiffs' claims are raised at least in part 'by way of a cause of action created by state law'—i.e. Article 78—is not an impediment to federal jurisdiction"); *Adams v. N.Y.C. Campaign Fin. Bd*., No. 25-CV-3380 (NGG) (LKE), 2025 WL 1920885, at *16 (E.D.N.Y. July 11, 2025) (exercising supplemental jurisdiction over Article 78 proceeding where parties consented and declining to remand the same); *Still v. DeBuono*, 927 F. Supp. 125, 128-29 (S.D.N.Y 1996), *subsequent preliminary injunction vacated and remanded to state court on other grounds*, 102 F.3d 50 (2d Cir. 1996) (found that IDEA issues underlie the Article 78 petition; proceeding pre-*Gunn/Grable* and denied motion to remand); *Doe v. New York Univ*., 537 F. Supp. 3d 483, 492 (S.D.N.Y. 2021) (holding that court could properly exercise diversity jurisdiction over an Article 78 proceeding).

The holding of those cases is consistent with Second Circuit and Supreme Court precedent holding that federal jurisdiction over appeals of state administrative actions can be proper.  In *City of Chicago v. International College of Surgeons*, 522 U.S. 156 (1997), the Supreme Court addressed whether a case involving claims that local administrative action violates federal law, as

well as state law claims for on-the-record review of the administrative findings, is within the jurisdiction of federal courts. *Id.* at 164. The Court held that federal constitutional challenges to municipal administrative action brought under the Illinois Administrative Review Law were within the federal question jurisdiction of the district courts, and thus removable. *Id.* The Court recognized that the federal constitutional claims were raised by way of a cause of action created by state law. *Id.* It found that this state-law provenance made no difference with respect to whether the issues presented a substantial question of federal law necessary for federal question jurisdiction. *Id.*

In *Freeman v. Burlington Broadcasters, Inc.*, 204 F.3d 311 (2d Cir. 2000), the Second Circuit applied the principles of *City of Chicago* when considering the removability of a case challenging an administrative decision in Vermont, holding that "[s]ince this case involves removal of a case pending in a state court of first instance, seeking review of an agency decision adjudicating a federal issue, it could have been brought originally in a district court, and is therefore properly removable." *Id.* at 319. These cases addressed other state administrative proceedings and found no bar to jurisdiction.

The Southern District of New York later relied upon *City of Chicago* and *Freeman* in holding that federal question jurisdiction existed over an Article 78 proceeding that had been removed to federal court. *See Casale v. Metro. Transp. Auth.*, No. 05 Civ. 4232 (MBM), 2005 WL 3466405, at *4-7 (S.D.N.Y. Dec. 19, 2005). In *Casale*, the district court held that "a claim brought in an Article 78 proceeding, as here, may be predicated on a violation of federal rights," satisfying federal question jurisdiction. *Id.* at *5. The court also determined that Petitioners' original Article 78 petition alleging a violation of the 14th Amendment started the clock to remove, and that because defendants should have known of the federal nature of the action from the original

petition (not an amended petition that separately alleged a Section 1983 violation) removal was untimely. *Id*. at *8-9. Although the court ultimately remanded on the basis of untimely removal, the rationale for remand thus further supported the notion that federal courts can exercise federal question jurisdiction over Article 78 proceedings.

Petitioners ignore each of these cases. Instead, they collect a group of cases addressing *supplemental* (not federal question) jurisdiction over Article 78 proceedings to argue that federal district courts are disinclined to exercise jurisdiction over state administrative law matters. *See* Petrs. Br. 6. Because these cases address supplemental jurisdiction, not federal question jurisdiction, they make conclusory statements as to the reviewability of Article 78 proceedings and focus instead on whether such proceedings may be joined to indisputable federal claims. *See, e.g.*, *Beckwith v. Erie County Water Auth*., 413 F. Supp. 2d 214, 217 (W.D.N.Y. 2006) (declining to decide whether it could exercise jurisdiction over the Article 78 proceeding, and remanding on discretionary 28 U.S.C. § 1367(c) grounds); *Morningside Supermarket Corp. v. N.Y. State Dep't of Health*, 432 F. Supp. 2d 334, 346-47 (S.D.N.Y. 2006) (discussing uncertainty as to whether federal courts can exercise federal jurisdiction over Article 78 proceedings, but applying supplemental jurisdiction analysis and declining to exercise supplemental jurisdiction on discretionary grounds); *Bartolini v. Cassels*, No. 17-cv-5671, 2018 WL 3023161, at *7 (S.D.N.Y. June 18, 2018) (declining to exercise supplemental jurisdiction on discretionary grounds), *aff'd*, 801 F. App'x 10 (2d Cir. 2020).

At best, these decisions reflect that courts within the Second Circuit have sometimes used broad language to discuss federal jurisdiction over Article 78 proceedings and are split as to whether federal courts may exercise jurisdiction over Article 78 proceedings. *See, e.g.*, *Mai v. New York State Off. of Temporary and Disability Assistance*, No. 25-MC-1899 (PKC), 2025 WL

1737263, at *1-2 (E.D.N.Y. May 22, 2025) (concerning a pro se plaintiff who had an injunction ordered against her in federal court to stop filing cases, and in that context declined to exercise jurisdiction over an Article 78 petition); *Blatch v. Hernandez*, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005) (after construing plaintiff's complaint to allege an Article 78 proceeding, since it did not expressly, holding that plaintiff's purported claim that a New York State administrative proceeding decision was arbitrary and capricious was a state-law proceeding that federal courts were not empowered to hear); *E. End Eruv Ass'n v. Town of Southampton*, No. 13-cv-4810 (AKT), 2014 WL 4773989, at *20-21 (E.D.N.Y. Sep. 24, 2014) (declining to exercise supplemental jurisdiction and noting the Second Circuit has not decided whether Article 78 itself deprives federal courts of subject matter jurisdiction); *see also Garofalo*, No. 1:22-cv-07620-NRM-VMS, 2023 WL 3792514, at *6 (citing to and disagreeing with *E. End Eruv Ass'n* on the Court's ability to exercise supplemental jurisdiction over Article 78 proceedings, noting: "[T]he Court has found no binding authority that divests it of discretion to consider Plaintiff's Article 78 claims. This Court will, as other district courts in this circuit have done, exercise supplemental jurisdiction over Plaintiff's claims.").

This Court's holding in *Medrano v. Margiotta*, No. 15-3704 (JMA) (ARL), 2017 WL 880964 (E.D.N.Y. Feb. 16, 2017)—on which Petitioners principally rely—is another example of the exercise of supplemental jurisdiction over an Article 78 claim. In *Medrano*, petitioners filed a state court action asserting a federal cause of action pursuant to 28 U.S.C. § 1983, as well as an Article 78 claim asserting that respondents were acting "without or in excess of jurisdiction" on the basis of the same acts complained of in the Section 1983 claim. *Id*. at *4. Respondents removed and asserted that the Court could exercise supplemental jurisdiction over the Article 78 proceeding. The Court concluded that "[b]ecause an Article 78 claim is based on state law, this

14

Court is only empowered to entertain this claim through an exercise of its supplemental jurisdiction," and collected cases addressing how courts decline to exercise supplemental jurisdiction over Article 78 proceedings. *Id.* In doing so, however, it noted that "the Second Circuit has declined to decide whether Article 78 itself deprives federal courts of subject matter jurisdiction." *Id.* at *4-5. The Court did not consider whether the Article 78 proceeding itself implicated federal questions under the *Grable* and *Gunn* analysis—and that issue appears never to have been presented to the Court in the parties' briefing for consideration. *Medrano* does not preclude a finding of federal question jurisdiction in this case. To the contrary, as explained further below, the *Gunn/Grable* test demonstrates that such jurisdiction exists here.

For these reasons, Petitioners' argument that district courts are categorically prohibited from exercising federal jurisdiction over claims raised in Article 78 petitions is without merit.

## II. THIS COURT HAS FEDERAL QUESTION JURISDICTION OVER PETITIONERS' CLAIMS

The *Gunn/Grable* test is the appropriate test to determine the existence of implied federal question jurisdiction. *Id.*; *see also Broder*, 418 F.3d at 195. Federal district courts in the Second Circuit have applied the *Gunn/Grable* test to evaluate whether Article 78 proceedings implicate federal question jurisdiction. *See, e.g.*, *Doe v. Starpoint Cent. Sch. Dist.*, No. 23-CV-207-LJV, 2023 WL 2859134 (W.D.N.Y. Apr. 10, 2023); *County of Nassau v. New York*, 724 F. Supp. 2d 295 (E.D.N.Y. 2010); *Casale v. Metro. Transp. Auth.*, No. 05 Civ. 4232 (MBM), 2005 WL 3466405, at *4-7 (S.D.N.Y. Dec. 19, 2005).

### A. The Amended Petition Turns on a Challenge of a Complex Federal Statutory and Regulatory Scheme

The parties agree that a federal issue is actually disputed, as Petitioners do not challenge this in their papers. *See* Petrs. Br. at 10 (arguing that PANYNJ cannot establish requirements three and four). Petitioners allege in their Amended Petition that PANYNJ has a duty to update the

NEM under 49 U.S.C. § 47503(b), by reason of alleged changes in runway usage at JFK. *See* AP ¶ 95(c) ("Failing to prepare such updated NEM in accordance with 49 U.S.C. § 47503(b)(2)"); ¶ 98 ("Respondents failed to comply with their mandatory statutory obligations under 49 U.S.C. § 47503(b) by failing to update the NEM which deprived and continues to deprive the Town, the Individual Petitioners and others similarly situated, including Town's residents, the right noise mitigation remedies and relief."); *see also* Petrs. Br. at 10. Any decision on Petitioners' claims (be it here or in state court) will require the Court to decide whether Respondents are mandated to update the NEM for JFK under 49 U.S.C. § 47503(b). Moreover, in an oversimplification of the federal scheme at issue, petitioners notably do not reference the FAA's implementing regulations in 14 C.F.R. part 150 in their Amended Petition, instead relying solely on the more general statutory provision in § 47503(b) underlying the regulations. Yet, a resolution of the dispute here turns not only on the meaning of the statute, but also on PANYNJ's application of the FAA's detailed regulations, i.e., for developing an NEM and determining when to update an NEM, as well as FAA air traffic control procedures, decision-making and operational data. Indeed, the Amended Petition depends entirely on the existence of such a federal issue.

### B.    The Federal Issue Is Substantial

The federal issue here is substantial because it turns on the meaning and application of a complex federal statutory scheme for aviation noise abatement enacted by Congress in the Aviation Safety and Noise Abatement Act of 1979 (PL 96-103; 94 Stat. 50), as amended, and as implemented by the FAA in detailed regulations at 14 C.F.R. part 150. *See NASDAQ OMX Grp., Inc. v. UBS, Sec., LLC*, 770 F.3d 1010, 1027-28 (2d Cir. 2014); *see also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005) (holding that federal jurisdiction existed because "[t]hese questions involve aspects of the complex federal regulatory scheme applicable to cable television rates"); *N.Y.C. Health & Hosps. Corp. v. WellCare of N.Y., Inc.*, 769 F. Supp. 2d 250, 257

(S.D.N.Y. 2011) (holding that federal jurisdiction existed because "the case implicates the complex reimbursement schemes created by Medicare law"). As set forth in the Amended Petition, the parties dispute PANYNJ's obligation to update the NEM under 49 U.S.C. § 47503(b). The dispute includes whether, under FAA regulations, a purported change in FAA air traffic controller runway assignments and the overall distribution of aircraft on approach to an airport constitutes "a change in the operation of the airport" that creates a "substantial, new noncompatible use," which could warrant an updated NEM by an airport operator. ECF Doc. No. 9-11 at 4-5; AP ¶¶ 68, 85, 91.

Petitioners wrongly argue that the federal issue is too fact dependent to be substantial and that implied federal issues must instead be "pure" issues of law, *see* Petrs. Br. at 12. In apparent support, Petitioners argue that the parties do not dispute the meaning of 49 U.S.C. § 47503, but rather only whether there was a sufficient "change in the operation of the airport that would establish a substantial new noncompatible use." *See id*. (asserting that PANYNJ's response did not mention 49 U.S.C. § 47503). That is not accurate. The assessment of whether there is federal question jurisdiction is based on the face of the complaint, and, here, the Amended Petition necessarily cites 49 U.S.C. § 47503 as the sole basis for its Article 78 claims. *See Freeman*, 204 F.3d at 317. Moreover, the underlying decision that Petitioners challenge directly refers to obligations arising under the FAA's Part 150 regulations, which is the federal agency's interpretation and implementation of the more general provision outlined in 49 U.S.C. § 47503. ECF Doc. Nos. 9-3, 9-11 at 4-5. Petitioners at all times understood that PANYNJ was assessing their request in the context of their obligation under 49 U.S.C. § 47503 and corresponding federal regulations and that the requirements *vel non* of the statute and regulations were at the core of their dispute.

Petitioners further argue that the federal issue is not substantial because any decision as to whether PANYNJ complied with 49 U.S.C. § 47503 is not a "pure question of law."  Petrs. Br. 12-13.  But the Second Circuit has held federal issues to be "substantial" even if not "purely" legal in nature, particularly where the federal issues implicate a complex federal regulatory scheme.  In *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), the Second Circuit held that "whether Cablevision violated 47 U.S.C. § 543(d) as alleged . . . by 'failing to provide plaintiff and the Class with the uniform rates required by 47 U.S.C. § 543(d)," necessarily raised a federal issue and that the issue was substantial because it involved "aspects of the complex federal regulatory scheme applicable to cable television rates, as to which there is 'a serious federal interest in claiming the advantages thought to be inherent in a federal forum,'" (citing *Grable & Sons Metal Prods.*, 545 U.S. 308).  Similarly, in *NASDAQ OMX Grp., Inc.*, the Second Circuit held that the question of whether NASDAQ violated the Exchange Act by "failing to operate a fair and orderly market" was a substantial federal issue because it was important to develop a uniform body of securities law, in the context of a dispute whether the 'propriety of [NASDAQ's] actions' violated that federal law duty."  770 F.3d at 1027-28.  As is the case in this proceeding, whether Cablevision violated any particular statute or whether NASDAQ operated a "fair and orderly market" no doubt involved some factual assessment, but the courts nonetheless determined federal question jurisdiction was proper because when complex regulatory schemes are involved "there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Broder*, 418 F.3d at 195 (quoting *Grable & Sons Metal Prods.*, 545 U.S. at 313).  As was the case in *Broder* and *NASDAQ*, the question as to whether a federal law was violated implicates federal question jurisdiction, particularly where, as here, the federal issue addresses a complex federal statutory and regulatory scheme between the FAA and airport operators for analyzing noise

impacts, identifying noncompatible land uses, and planning implementing measures to provide noise abatement.

Moreover, Respondents have not found, and Petitioners have not identified, any federal or state court case interpreting an airport operator's obligations to update a NEM under 49 U.S.C. § 47503 and the corresponding 14 C.F.R. Part 150 regulations. As such, it appears this is a case of first impression. That any decision from this court (or any court) has the potential, if not the likelihood, to affect airport operators across the country further supports the substantiality of the issues in this case and weighs strongly in favor of this case being heard in a federal forum. *Grable*, 545 U.S. at 312 ("The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and *hope of uniformity that a federal forum offers on federal issues....*") (emphasis added).

Petitioners' cases do not support a different conclusion. Importantly, *Doe v. Starpoint* and *County of Nassau v. New York* recognized that the *Gunn*/*Grable* test applies to reviewing Article 78 proceedings for federal question jurisdiction, but declined to exercise federal question jurisdiction based on circumstances not present here. The court in *Doe* held that the federal issue was not "substantial" because it involved a fact-specific determination concerning the circumstances surrounding a student's removal from school under a federal statute. *Doe v. Starpoint Cent. Sch. Dist.*, No. 23-CV-207-LJV, 2023 WL 2859134, at *5 (W.D.N.Y. Apr. 10, 2023). Critically, the interpretation of the school's *obligations under a federal statute* were not at issue. Here, however, interpretation of a federal statute is at issue: whether PANYNJ was under a mandatory obligation to update the NEM for JFK under 49 U.S.C. § 47503 and corresponding

regulations, which will require a court to addresses the complex federal scheme governing aviation noise abatement.

The court's decision in *County of Nassau* is likewise distinguishable. There, the court found that the petitioner had not plead a federal issue, which was "actually disputed", because the substantive references to the federal law made up six paragraphs out of a 202-paragraph complaint, and the court did not need to address the federal law to decide the claim. *See County of Nassau v. New York*, 724 F. Supp. 2d 295, 303-04 (E.D.N.Y. 2010). Here, by contrast, the federal statute is at the core of Petitioners' claims, and any decision will require a court to interpret 49 U.S.C. § 47503 and corresponding regulations.

### C.    Exercising Jurisdiction Will Not Disrupt the Balance of State and Federal Court Litigation

The balance of federal and state court litigation will not be disrupted, but rather would be reinforced by adjudication of this case of first impression in federal court. The key considerations when applying this factor are whether exercising jurisdiction will threaten the federal-state balance envisioned by Congress in this area. *See NASDAQ OMX Grp., Inc.*, 770 F.3d at 1027-28. Here, because it will be the rare Article 78 proceeding "that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal [noise mitigation statutes and regulations] will portend only a microscopic effect on the federal-state division of labor." *Grable*, 545 U.S. at 315.

Petitioners do not address the substantive nature of their 49 U.S.C. § 47503 claim, instead arguing that "Article 78 proceedings are inherently state law vehicles and no federal cause of action is pled." *See* Petrs. Br. at 15. This argument ignores the fact that the entire basis for Petitioners' alleged harm, and the relief they request, is premised on an airport operator's obligations under 49 U.S.C. § 47503 in the context of a larger statutory scheme, as well as under the FAA's

corresponding regulations implementing the aviation noise abatement statutory scheme and explaining the standards to be applied by an airport operator. Importantly, as noted *supra* Section I, New York state courts routinely dismiss Article 78 proceedings that purport to bring claims under federal laws that do not permit private rights of action. *See, e.g.*, *Churches United for Fair Hous., Inc.*, No. 151786/2018, 2018 WL 3646976, at *34; *George*, 2 A.D.3d 294, 769 N.Y.S.2d 535; *Matter of E. Ramapo Cent. Sch. Dist.*, 130 A.D.3d at 20. These cases demonstrate that there is no independent "right" derived from Article 78 and that when an Article 78 proceeding alleges breach of a federal statute, a federal cause of action is plead. That Congress did not provide a private right of action in the federal noise abatement statutory scheme (as will be more fully set forth in Respondents' motion to dismiss), and that New York state courts do not permit Article 78 proceedings to move forward where there is no private right of action under federal statute, supports that this is a federal case which, at a minimum, must have the "private right of action" issue decided by a federal court.

Moreover, federal aviation statutory and regulatory issues are routinely litigated in federal court such that exercising jurisdiction over a case interpreting 49 U.S.C. § 47503 in the context of the overall statutory scheme, and FAA's implementing regulations, will not disrupt the federal and state court litigation balance. *See City of Burbank v. Lockheed Air Terminal Inc*., 411 U.S. 624, 633-34 (1973) (discussing the pervasive nature of the scheme of federal regulation of aircraft noise); *N. Am. Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233-34 (2d Cir. 1978) (the Federal Aviation Act preempts state law claims within its scope).

For the foregoing reasons, Respondents have met their burden to establish federal question

jurisdiction exists under the *Gunn* and *Grable* test.[6]

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that Your Honor deny Petitioners' Motion to Remand.

Dated: New York, New York
       September 26, 2025

LOEB & LOEB LLP


By:    /s/ *Frank D. D'Angelo*
       Frank D'Angelo
       Danielle C. Quinn
       345 Park Avenue
       New York, NY  10154
       Telephone:  212.407.4000
       Facsimile:  212.407.4990
       fdangelo@loeb.com
       dquinn@loeb.com


       Steven S. Rosenthal*
       John David Taliaferro*
       901 New York Avenue NW,
       Suite 300 East
       Washington, DC 20001
       Tel.: 202-618-5034
       Fax: 202-318-0524
       srosenthal@loeb.com
       jtaliaferro@loeb.com


       *Attorneys for Respondents Rick Cotton, in his capacity as Executive Director of the Port Authority of New York and New Jersey, and the Port Authority of New York and New Jersey*

       **admitted pro hac vice*

---

[6] A fee award for Respondents' filing the Notice of Removal is not warranted because Respondents' removal petition is objectively reasonable, for the reasons detailed above.  *See Casale v. Metro. Transp. Auth.*, 2005 WL 3466405, at *11.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 26, 2025, I filed the foregoing with the Clerk of Court using the CM/ECF system and caused to be served a true and correct copy of the foregoing on the person below via ECF and electronic mail:

Nicholas C. Rigano
James P. Rigano
Laurie Sayevich Horz
Rigano LLC
538 Broad Hollow Road, Suite 301
Melville, New York 11747
Telephone No. (631) 756-5900
nrigano@riganollc.com

*Attorneys for Petitioners*

/s/      *Frank D. D'Angelo*

241853217.4
922222-12635